```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ZAHIR KHAN,

                        Plaintiff,                              REPORT AND
                                                                RECOMMENDATION
            -against-                                           CV 19-525 (JS)(AYS)

CONTINENTAL HOME LOANS, INC.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., SHELLPOINT
MORTGAGE SERVICING, RUSSELL CARL
BUCHERI, ESQ., BANK OF AMERICA, BAYVIEW
LOAN SERVICING, INC, LLC; JOHN DOES and
JANE DOES 1 through 100,

                        Defendants.
-------------------------------------------------------------X
```

**SHIELDS, Magistrate Judge:**

This is an action commenced by Plaintiff pro se, Zahir Khan ("Plaintiff"), alleging claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO") and fraud in connection with the now completed foreclosure of a residential property (the "Property"). See Docket Entry herein ("DE") [1]. The Property is located within this District. It was purchased by Plaintiff and another individual (who is not a party to this lawsuit) in 2008. Plaintiff names as a Defendant Continental Home Loans, Inc. ("Continental"), the mortgage lender that allowed him to purchase the Property in 2008 and refinance the Property in 2009. Plaintiff also names as a Defendant Shellpoint Mortgage Servicing ("Shellpoint"), as well as various other Defendants, including the Bank of America, and entities that appear to be loan servicing companies. Finally, Plaintiff names Carl Burcheri, Esq., an attorney. All of the Defendants named are alleged to have participated in a "fraudulent and corrupt enterprise against Plaintiff's property interests." DE [1] at II (A)-(G).

1

Presently before this Court, on referral from the Honorable Joanna Seybert for Report and Recommendation, is the motion of Defendant Shellpoint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's complaint for failure to state a claim. DE [18]. Also before the Court is Plaintiff's motion to strike Defendant's motion. DE [30]. Shellpoint notes that the grounds upon which it seeks dismissal apply to all Defendants named herein. The Court agrees. For the following reasons, this Court respectfully recommends that Shellpoint's motion be granted and that the District Court sua sponte dismiss the Complaint, in its entirety as to all Defendants, without leave to replead.

FACTUAL BACKGROUND

I.   Basis of Facts Recited Herein

In support of its motion, Shellpoint relies on the Complaint filed herein as well as the mortgage, foreclosure and bankruptcy documents. The mortgage and foreclosure documents refer to the financing and eventual foreclosure of the mortgage on the Property. These documents are referenced in the Complaint and are appropriate to consider in the context of this motion to dismiss.  The bankruptcy documents were filed in connection with bankruptcy proceedings commenced by Plaintiff, which proceedings were eventually dismissed. These publicly filed court documents are among those of which this Court may take judicial notice and consider in connection with the present motion. See Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The documents that this Court will therefore consider in the context of the motion will include those annexed as Exhibits A-O to the Declaration of William J. Geller, Esq., submitted in support of Shellpoint's motion to dismiss. See DE [18-2], Exs. A-O. The documents are:

- Exhibit A:   Complaint herein

2

- Exhibit B:   April 18, 2008 Deed to the Property
- Exhibit C:   April 18, 2008 Mortgage
- Exhibit D:   March 25, 2009 Mortgage
- Exhibit E:   Satisfaction of April 18, 2008 Mortgage
- Exhibit F:   2011 Bankruptcy Petition
- Exhibit G:   2011 Bankruptcy Docket
- Exhibit H:   2011 Bankruptcy Schedules
- Exhibit I:   2011 Bankruptcy Discharge
- Exhibit J:   Foreclosure Complaint
- Exhibit K:   Foreclosure Short Order Form Order of Reference
- Exhibit L:   Foreclosure Short Order Form and Judgment of Foreclosure and Sale
- Exhibit M:   2018 Bankruptcy Petition
- Exhibit N:   2018 Bankruptcy Trustee's Motion to Dismiss
- Exhibit O:   2018 Bankruptcy Order of Dismissal

II.   <u>Plaintiff's Purchase and Financing of the Property</u>

Plaintiff financed his purchase of the Property by securing a loan from Continental on April 18, 2008. In connection therewith he executed a Mortgage and Promissory Note in the amount of $377,660.00 (the "Initial Loan"). Geller Decl., Ex. C. He thereafter refinanced the Loan and executed a new mortgage to Continental in 2009 in the amount of $373,600.00. Geller Decl., Ex. D. In apparent connection with the refinance, Continental issued a Satisfaction of the Initial Loan on April 14, 2009. Geller Decl., Ex. E. Documents properly before the Court indicate that the last payment made by Plaintiff on the mortgage was in 2010. <u>See</u> Geller Decl., Ex. J (foreclosure complaint and exhibits annexed thereto)

3

III.  The 2011 Bankruptcy

On June 21, 2011, Plaintiff, represented by counsel, filed a Chapter 7 Petition in Bankruptcy (the "2011 Bankruptcy"). Geller Decl., Ex. F. Schedules annexed by Plaintiff to the 2011 Bankruptcy petition do not indicate any claim or cause of action held by Plaintiff. See Geller Decl., Ex. F.  In any event, Plaintiff obtained a Chapter 7 bankruptcy discharge, discharging him from personal liability in connection with the mortgage on the Property. This discharge left the mortgage lien intact.  Geller Decl., Ex. I; see 11 U.S.C. 727(b).

IV.  The 2015 Foreclosure and the 2018 Judgment of Foreclosure

On December 31, 2015, a foreclosure action was commenced by Bayview Loan Servicing, LLC ("Bayview") against Plaintiff, seeking foreclosure due to non-payment. Geller. Decl., Ex. J. On September 11, 2017, the State Court in that proceeding entered a Short Form Order granting Bayview's motion for summary judgment and to appoint a referee. Three days later, the State Court entered an order of reference with respect to the sale of the Property in foreclosure. Geller Decl., Ex. K.  On April 3, 2018, the State Court entered a Short Form Order, granting Bayview's motion to confirm the referee's report and for a judgment of foreclosure and sale. On the same date, that court entered a Judgment of Foreclosure and Sale. Geller Decl., Ex. L.

IV.  The 2018 Bankruptcy

On July 2, 2018, Plaintiff filed a Chapter 13 Bankruptcy Petition (the "2018 Bankruptcy"). On motion of the Trustee therein, for failure to make payments, the Bankruptcy Court dismissed the 2018 Bankruptcy. Geller Decl., Exs. N and O.

4

V.	The Present Action

On January 28, 2019, Plaintiff commenced this action. DE [1]; Geller Decl., Ex. A. Plaintiff's Complaint alleges general facts relating to the 2008 mortgage crisis. He alleges that each Defendant named is the successor or agent in interest to Continental. DE [1] at III(2). While Defendants may deny this characterization, the Court will assume, for purposes of this motion that all named Defendants are related to Continental as alleged by Plaintiff.

Plaintiff's Complaint contains allegations regarding the subprime mortgage industry that unlawfully operated their companies to engage in fraud by "rigging financial incentives within the industry to reward a nationwide pattern of brokering, originating, bundling as Securities, selling to the Secondary market, Servicing and foreclosing" on loans with little or no income verification or documentation. Plaintiff supports his allegations regarding the subprime mortgage industry, at least in part, on testimony made in 2010 to public officials. See DE [1] at V(7). Loans subject to such fraud are alleged by Plaintiff to have been made between 2001 and 2008. In addition to detailing overall wrongdoing in the subprime mortgage industry, Plaintiff's Complaint refers to the inflation of appraised property values by appraisers, without proper supporting documentation. See DE [1] at VII. Since Plaintiff obtained the Initial Loan in 2008, it is presumed that he counts his loan as falling within the category of loans referred to in the 2010 testimony referred to in the Complaint.

The particular facts relating to Plaintiff's mortgage center only around his allegation that the amount extended to him under the Initial Loan exceeded the Nassau County assessment of the Property's value by approximately $13,000. Plaintiff appears to argue that Defendants are at fault because the amount of money he borrowed to purchase the Property ($377,666.00) was approximately 5% in excess of the $364,700.00 assessed value of the Property. The assessed

5

value of the Property that Plaintiff relies upon is set forth on a "Property Card," which is a document referred to as a "Property Card Assessment." DE [1], Ex. 2. It indicates that the assessed value of the Property, for 2008 property tax purposes, was $364,700.00. This amount reflects a land value of $202,440.00, and a building value of $162,260.00. The Property Card is a publicly filed and available document that was obtained by Plaintiff in 2018.

Plaintiff claims that he did not discover the wrongdoing set forth in the Complaint until 2018, when he first saw the Property Card. It was then that he alleges knowledge of facts set forth above, which he characterizes as misrepresentations regarding the appraised value of the property. He states that he learned of these facts "after doing some research about the subject matter of the Complaint on December 20, 2018." DE [1] at VIII (37).

As noted, Plaintiff seeks to hold all Defendants liable as successors, and/or agents of Continental, the original lender. Not all of those named appear to have been served. Defendant Bayview Loan Servicing, LLC is one of the Defendants that has been served, but it in its answer, it denies having any involvement with the financing referred to in this action. DE [11] at 1(H). This assertion may not be true since Bayview appears to have been the party that initiated the foreclosure in connection with the Property. See Geller Decl., Ex. J. In any event, for purposes of this motion, the Court assumes the truth of Plaintiff's allegations as to Bayview's role with respect to the Property. It also assumes that all Defendants have played some role in connection with the claims set forth in Plaintiff's Complaint.

As to legal causes of action, Plaintiff alleges claims against all Defendants pursuant to RICO and common law fraud. Plaintiff claims that the Defendants are liable because Continental extended a loan to Plaintiff in excess of the assessed value as stated on the Property Card. Even though the Initial Loan allowed Plaintiff to purchase the property, he asserts that Defendants are

6

at fault because he did not receive value for the loan that was extended to him. As to relief, Plaintiff seeks to recover the difference between the value of the Property and its actual value as argued to be reflected in the Property Card. DE [1] at 74. This amount is alleged to be $175,220.00. Plaintiff seeks to recover three times this amount, as treble damages under RICO, in the amount of $525,660.00. DE [1] at 80. As this amount seeks any amount borrowed, Plaintiff argues that any amount due under the mortgage be cancelled and that the Mortgage should be deemed satisfied. DE [1] at 84. Plaintiff also argues that since the Property was not properly valued, he received nothing in exchange for the note executed at the time of the mortgage. DE [1] at 93. He also states that no "Loan" of money ever took place. DE [1] at 104. This is argued despite the fact that Plaintiff borrowed an amount of money that, along with his down payment, allowed him to take possession of the Property.

VI.    The Motion to Dismiss

As noted, Defendant Shellpoint moves to dismiss, pursuant to Rule 12(b)(6), for failure to state a claim. Shellpoint argues several points in support of its motion. First, it argues that the claims alleged are time-barred. Even if timely, the Complaint is nonetheless argued to be subject to dismissal under the Rooker-Feldman doctrine, as well as principles of res judicata, collateral estoppel and judicial estoppel. Additionally, to the extent that Plaintiff has any viable claim, that claim is argued to be held by the 2011 bankruptcy trustee, and not by Plaintiff. Finally, even assuming that the prior arguments do not bar Plaintiff's claims, Shellpoint argues that the Complaint is nonetheless subject to dismissal for failure to state any plausible cause of action.

Plaintiff has not responded to the motion. Instead, he has interposed his own motion, styled as a motion to strike Shellpoint's motion to dismiss.

Shellpoint first sought leave to move to dismiss in February of 2019, when this matter was pending before the Honorable Joseph F. Bianco. Permission was granted and the motion was filed in May of 2019. This matter was thereafter transferred and is currently pending before the Honorable Joanna Seybert. In October of 2019, Judge Seybert referred the motion to this Court for Report and Recommendation.

## DISCUSSION

I. Legal Principles

  A. Standards on Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Arista Records, LLC v. Doe 3, 604 F.3d 110, 119–20 (2d Cir. 2010). Facial plausibility is established by pleading factual content sufficient to allow a court to reasonably infer the defendant's liability. Twombly, 550 U.S. at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 555. Nor is a pleading that offers nothing more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," sufficient. Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 555). As required in the context of a motion to dismiss, the factual allegations in the Complaint, though disputed by Defendants, are accepted to be true for purposes of this motion, and all reasonable inferences are drawn therefrom in favor of the Plaintiff.

While facts to consider in the context of a Rule 12 motion to dismiss are generally limited to those set forth in the pleadings, a court may consider matters outside of the pleadings under certain circumstances. Specifically, in the context of a Rule 12(b)(6) motion, a court may

8

consider: (1) documents attached to the complaint as exhibits or incorporated by reference therein; (2) matters of which judicial notice may be taken; or (3) documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); see also International Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

Pursuant to the standard above, the Court deems it appropriate to consider, in addition to the pleadings, the publicly filed mortgage, foreclosure and bankruptcy documents referred to above. With the standards above and these properly considered documents in mind, the Court turns to discuss the legal principles to be applied and the merits of the motion.

II. Disposition of the Motion

    A. Plaintiff's Claims are Time Barred

    1. The RICO Claim

Civil actions arising under RICO are governed by a four-year statute of limitations. 28 U.S.C. §1658. Thus, to be timely, the commencement of Plaintiff's RICO cause of action must be no longer than four years after the accrual of his claim. Claims under RICO are said to accrue when the plaintiff has actual or inquiry notice of injury, i.e., when plaintiff discovers or should have discovered his RICO injury. Koch v. Christie's Int'l PLC, 699 F.3d 141, 150 (2d Cir. 2012). Inquiry notice occurs when a potential plaintiff has "storm warnings" that would suggest to a person of ordinary intelligence the probability that fraud occurred. Id. at 153. Storm warnings regarding alleged mortgage fraud occur when "setbacks that the investment suffered would have caused a reasonable investor to suspect fraud and make further inquiries into the

accuracy of defendants' representations regarding the collateral for and risk associated with the loans." Rosenshein v. Meshel, 688 Fed. App'x. 60, 63-64 (2d Cir. 2017).

For Plaintiff's claim to be timely, inquiry notice of any fraud (and thus the accrual of any RICO claim) must have taken place within four years of the filing of his Complaint, i.e., no later than 2015, which is far in excess of the 2019 date when this action was commenced. Here, there is no question but that Plaintiff was on inquiry notice, and his RICO claim therefore accrued, no later than 2011, which is when Plaintiff first filed for bankruptcy (after failing to make mortgage payments in 2010). At the time of the bankruptcy, Plaintiff, represented by counsel, was well aware of the home mortgage crisis referred to in his Complaint. Indeed, Plaintiff admits such knowledge through his Complaint when he states "during the years 2005 through 2011 . . . Plaintiff became aware" of the possibility that he was the victim of some type of foreclosure fraud. DE [1] at ¶¶ 56, 57, 64.

Moreover, it is likely that Plaintiff's claim accrued well before 2011. The Property Card upon which he appears to base his claim is a publicly filed document that was available to Plaintiff in 2008. The fact that he did not come upon this document until 2019 does not mean that accrual did not take place until 2019.

In sum, there is no question, based upon Plaintiff's own allegations as set forth in his Complaint, that any RICO claim accrued by 2011 and was time-barred four years thereafter. This action, commenced in 2019, is therefore unquestionably time-barred.

2. The Fraud Claim

New York State claims based upon fraud are required to be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with

reasonable diligence have discovered it." N.Y. CPLR § 213(8).  Thus, the six-year period begins to run from the time of the alleged fraud. The two-year period begins to run from the date of actual or imputed discovery. Wiedis v. DreamBuilder Investments, LLC, 268 F. Supp.3d 457, 467 (S.D.N.Y. 2017). Inquiry notice is deemed to occur where there are "[p]ublic reports of and lawsuits alleging fraud . . . ." Sejin Precision Indus. Co., Ltd. v. Citibank, N.A., 726 Fed. App'x 27, 30 (2d Cir. 2018).

The fraud Plaintiff alleges, for purposes of the six-year statute of limitations, must have accrued at the time that the Initial Loan was extended to allow him to purchase the Property. That took place in 2008.  Applying this version of the fraud statute of limitations gave Plaintiff until 2014 to commence a lawsuit. The two-year discovery period of limitations began to run, at the latest, in 2011. As is the case with respect to his RICO claims, Plaintiff was on inquiry notice of any alleged fraud no later than 2011.  Applying the two-year discovery rule therefore required Plaintiff to commence a fraud action no later than 2013. It is thus clear that whatever limitations period is applied, Plaintiff's state law fraud claim, alleged for the first time in this Court in 2019, is time-barred.

      B.      <u>Plaintiff's Claims Are Also Barred by the Rooker-Feldman Doctrine</u>

In this lawsuit Plaintiff seeks, as relief, that this Court vacate the judgment of foreclosure. DE [1] at 47 (demand for relief from judgment). As noted above, the State Court entered a final judgment of foreclosure with respect to the Property in 2018.  Under these circumstances the Rooker-Feldman doctrine deprives this Court of jurisdiction over Plaintiff's claims and requires dismissal of this lawsuit. See Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 427 (2d Cir. 2014) (noting that the Rooker-Feldman doctrine bars claims that "invite . . . review and rejection" of state court judgments); Holmes v. Caliber Home Loans, Inc., No. 16-CV-3344,

11

2017 WL 3267766, at *7 (S.D.N.Y. July 31, 2017) ("Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the Rooker-Feldman doctrine.") (quoting Webster v. Wells Fargo Bank, N.A., No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. Webster v. Penzetta, 458 Fed. App'x. 23 (2d Cir. 2012).

III.  The Complaint Should be Dismissal as to All Defendants

As noted, only Defendant Shellpoint has moved to dismiss. Other than Defendant Bayview, it is unclear whether Plaintiff has properly served the other named Defendants, let alone identified any of the 1-100 John and Jane Does he seeks to name.

It is respectfully recommended that the reasons set forth by this Court above warrant sua sponte dismissal of all of Plaintiff's claims against all Defendants (whether served or not). Plaintiff's Complaint clearly fails to state a claim against any Defendant. Accordingly, this Court recommends dismissal of the Complaint in its entirety.

IV.  Dismissal Should be Without Leave to Replead

Finally, the Court recommends that Plaintiff's Complaint be dismissed without leave to replead. There is no question but that Plaintiff's claims arose at the latest in 2011. This date of accrual is based upon Plaintiff's own statements of fact, as set forth in his Complaint. For the reasons set forth above, any claim is long time-barred. Moreover, there is no question but that any claim is also barred by the Rooker-Feldman doctrine. Accordingly, this Court recommends that dismissal of Plaintiff's complaint be with prejudice and without leave to replead. See Tocker v. Philip Morris Cos., 470 F.3d 481, 491 (2d Cir. 2006) (noting that a court may deny leave to amend where amendment would be futile).

RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant Shellpoint's motion to dismiss, appearing at Docket Entry [18], be granted in its entirety, and that Plaintiff's motion to strike, appearing at Docket Entry [30] be denied. The Court further recommends that the Complaint be dismissed as to all Defendants, with prejudice and without leave to replead.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Defendant Shellpoint's counsel is directed to serve a copy of this Report and Recommendation on the Pro Se Plaintiff, and to file proof of service on the docket sheet, within three days. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED.**

Dated: Central Islip, New York
February 4, 2020                                            /s/     Anne. Y. Shields
                                                            ANNE Y. SHIELDS
                                                            United States Magistrate Judge